**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| FEEDING OUR FUTURE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: _____ |
| | ) |
| MINNESOTA DEPARTMENT OF EDUCATION | ) |
| | ) |
| Defendant. | ) |

---

**COMPLAINT AND JURY DEMAND**

---

1. Thousands of qualified children in low-income and minority communities are going without desperately needed federal food programs because MDE refuses to process Feeding Our Future's applications. Feeding Our Future is one of the largest independent sponsors of federal food programs in Minnesota. It currently has over 50 applications pending to bring millions of dollars in federal funds to feed thousands of Minnesota's most vulnerable children. Despite federal regulations requiring MDE to process applications within 30 days, MDE has let many of Feeding Our Future's applications languish in just the first step of the application process for over 60 days and counting.

2. Feeding Our Future brings this action to compel MDE to comply with the federal law and process its applications so it can help feed low-income and minority

children that have been disproportionately impacted by a global pandemic and widespread social unrest.

## THE PARTIES

3. Feeding Our Future is a non-profit organization based in Minneapolis. It is dedicated to making federally funded food programs accessible to low-income and minority communities in Minnesota.

4. The Department of Education is a state agency responsible for administering the federal food programs in Minnesota.

## JURISDICTION AND VENUE

5. This Court also has jurisdiction over this matter under 28 U.S.C. § 1332 because it arises under federal. The federal food programs at issue are governed by federal law. There are no Minnesota state laws or regulations applicable to the administration of the federal food programs.

6. Venue is appropriate under 28 U.S.C. § 1391(b)(1) and (2) because MDE resides in this district and the entirety of the events occurred here.

## GENERAL ALLEGATIONS

**I. The USDA's Food Service Programs**

7. In 1968 the Legislature adopted the National School Lunch Act to provide "nutritious foods that contribute to the wellness, healthy growth, and development of young children, and the health and wellness of older adults and chronically impaired persons." 7 C.F.R. § 226.1

8. There are two major components to the USDA's food service programs, the Child and Adult Care Food Program ("CACFP") and the Summer Food Service Program ("SFSP"). Those two programs work in tandem to ensure low-income children are provided free, nutritious meals year-round. CACFP provides meals after school, and SFSP provides meals when schools are not in session.

9. Both programs function in effectively the same way. A non-profit organization applies to the state agency to become an approved sponsor. Once approved, the sponsor enters a contract with the state agency to provide CACFP or SFSP services. The sponsors run the programs and ensure compliance with all federal regulations. The sponsors work with low-income communities to identify sites where children can receive free meals in a safe and supervised environment such as schools, parks, community centers, clinics, apartment complexes, or other community gathering places.

10. Both programs are entirely funded by the USDA and administered by state agencies. In Minnesota, the programs are run by the Department of Education. The Minnesota Legislature has not adopted any laws governing CACFP or SFSP and MDE has not promulgated any rules. The only applicable requirements are in the federal law and regulations.

**II. Feeding Our Future**

11. Feeding Our Future is a non-profit organization that was formed in November 2016 to help low-income and minority communities that have been traditionally underrepresented participate in CACFP and SFSP funding.

12. Feeding Our Future applied to MDE and was approved to be a sponsor of CACFP and SFSP programs.

13. On July 2018, Feeding Our Future and MDE executed a contract whereby Feeding Our Future agreed to provide CACFP and SFSP services, and MDE agreed to comply with all federal regulations and provide applicable funds and commodities to help it serve low-income communities.

14. Feeding Our Future is the largest independent CACFP and SFSP sponsor in Minnesota. It provides federally funded meals to nearly 20,000 children a day and brings in millions of dollars of federal funds every month to the State.

15. Feeding Our Future has 15 full-time staff and 45 part-time staff. Its full-time staff members are deeply rooted and connected to the communities they serve and collectively speak 10 languages.

16. The communities Feeding Our Future serves were hit hard by COVID-19 and social unrest resulting from the death of George Floyd. As a result, most schools, restaurants, childcare providers, and religious organizations suddenly and indefinitely closed, turning what MDE described as a "nutrition gap" into an "urban food desert."

**III. The Impacts of the Pandemic and Social Protests.**

17. Minneapolis has long had a pronounced disparity in nutritional foods available to children in low-income and minority communities. MDE has described the issue as a "nutrition gap" and MDE Commissioner Ricker has noted: "Nutrition is one key to academic success."

4

18. According to MDE, over 80% of eligible children in low-income and minority communities do not have access to SFSP food services. To help combat the issue, on February 1, 2020, MDE issued a press release encouraging more organizations to become sponsors of SFSP and CFCP programs. MDE explained: "There are many low-income areas in Minnesota underserved and in need of a sponsor to operate a summer feeding site, especially in Greater Minneapolis."[1]

19. In March 2020, the disparity grew greater as low-income and minority communities were hit particularly hard by the global COVID-19 pandemic. In response to the pandemic, schools, community centers, religious organizations, and neighborhood centers were forced to close. The impacts of the pandemic were devastating and universal but were particularly pronounced in low-income and minority communities. Food shortages become food crises for the most vulnerable in the community.

20. In May 2020, the streets of Minnesota erupted in protest in reaction to the death of George Floyd. Businesses, grocery stores, and restaurants in low-income communities were looted, burned, and destroyed.

21. As one person who works for the Lake Street Council put it: "Our largest grocery stores are also gone. Right now, our community, we live in a food desert, which

---

[1] https://m.austindailyherald.com/2020/02/minnesota-department-of-education-seeks-sponsors-for-summer-food-service-program/

happened overnight."[2]   Similar comments and concerns were echoed by numerous community leaders.[3]

22.   The impacts of the pandemic and social protests and their disproportionate effect on minority communities cannot be overstated.

23.   In response to the exceptional circumstances of the public health emergency, the Legislature passed the Families First Coronavirus Response Act ("FFCRA").  Under that authority, the USDA established nationwide waivers of federal regulatory requirements to increase participation in CACFP and SFSP.

24.   For example, the USDA extended the summer program through June 2021; it allowed meals to be reimbursed before applications were approved; it reduced requirements for the locations of distribution sites; it allowed meals to be taken home by parents instead of eaten on site by the children; it no longer required sites to provide enrichment activities; and a host of others.

25.   The Legislature and USDA have been clear that the priority is increasing desperately need access to food through CACFP and SFSP.

---

[2] Marketplace, June 4, 2020, available at https://www.marketplace.org/2020/06/04/neighborhoods-where-stores-were-destroyed-become-food-deserts-overnight/

[3] *See* The Circle, July 6, 2020, available at http://thecirclenews.org/cover-story/covid-protests-bring-food-shortages-and-community-support/;

### IV. MDE Refuses to Allow Feeding Our Future to Apply for Additional Sites.

26. MDE has consistently refused to allow Feeding Our Future to submit applications to open new distribution sites. Since September 8, 2020, Feeding Our Future has submitted 51 applications to open new distribution centers in low-income and minority communities. Without explanation, MDE has refused to take even the first step on 41 of its applications and refused to process another 10.

27. Under federal law, "MDE is charged by the regulations to establish an application process and approve or disapprove applications based upon the standards articulated in the federal regulations." *In re Partners in Nutrition*, 896 N.W.2d 564, 571 (Minn. App. 2017).

28. The federal regulations require MDE to process applications and inform the applicant of its decision in writing within 30 days. 7 C.F.R. 226(b)(3).

29. On May 27, 2020, MDE reported to the USDA that it was experiencing a high demand of applicants to participate in SFSP and requested that the mandatory 30-day deadline to respond to applications be extended to 45 days.

30. On June 23, 2020, the USDA responded that it would allow MDE 45 days to respond to SFSP applications it received by July 31, 2020. MDE did not request, and was not given, an extension of the 30-day deadline for CACFP applications.[4]

---

[4] It is not clear what authority USDA relied on to extend the federal regulatory requirement. Regardless, the waiver ended on July 31, 2020, and has no application here.

7

31. USDA's extension of the 30-day deadline has long expired and is not applicable to any of Feeding Our Future's pending applications.

32. In an attempt to circumvent the rules, MDE has created a two-step application process.  First, before MDE allows a sponsor to submit an application for a new distribution site, it requires the sponsor to apply for a "site ID."  Without a site ID, sponsors cannot access MDE's electronic platform to submit an application.  An application for a site ID must include substantial information, including a site ID request form; a signed agreement between the sponsor and the site; a completed check list showing that the site is ready to operate; staff training records; and an area eligibility map, among others.  Once MDE issues a site ID, it then allows the sponsor to move to step two and submit the actual application to participate in the food program.

33. The Minnesota Court of Appeals has already chastised MDE for creating a two-step application process in violation of federal regulations.  *See*, *In re Partners in Nutrition*, 896 N.W.2d 564, 571 (Minn. App. 2017) (noting that nothing in the federal regulations allow MDE to create a multi-step application process or impose requirements not based on federal regulations).

34. Since September 8, 2020, Feeding Our Future has submitted over 50 applications for new CACFP and SFSP distribution sites.  MDE has kept 41 applications in step one for up to 64 days and counting.

35. The chart below shows the applications Feeding Our Future has submitted for site IDs without response from MDE.

| | Site Name | Date Site ID Requested | Number of Days Pending as of 11.11.20 |
|---|---|---|---|
| 1 | K' Dollar Grocery | 9.8.20 | 64 Days |
| 2 | Sister's Grill | 9.8.20 | 64 Days |
| 3 | ASA Limited | 9.8.20 | 64 Days |
| 4 | Brava Restaurant | 9.8.20 | 64 Days |
| 5 | Baraka Allah | 9.14.20 | 58 Days |
| 6 | Bright Horizons | 9.14.20 | 58 Days |
| 7 | M5 Café | 9.14.20 | 58 Days |
| 8 | Wacan Restaurant | 9.15.20 | 57 Days |
| 9 | Olive Management | 9.16.20 | 56 Days |
| 10 | Muna Halal | 9.16.20 | 56 Days |
| 11 | Brava Café | 9.16.20 | 56 Days |
| 12 | Lake Street Kitchen | 9.17.20 | 55 Days |
| 13 | Tabuuk Catering | 9.17.20 | 55 Days |
| 14 | Great Lakes | 9.25.20 | 48 Days |
| 15 | Los Ranchos Mercado | 9.25.20 | 48 Days |
| 16 | Gold Finger | 9.25.20 | 48 Days |
| 17 | Barwago Restaurant | 9.30.20 | 42 Days |
| 18 | Multiple Community Services | 10.6.20 | 36 Days |
| 19 | Shamsia Hope | 10.12.20 | 30 Days |
| 20 | Haji's Kitchen | 10.13.20 | 29 Days |
| 21 | Dakota Station | 10.13.20 | 29 Days |
| 22 | Southcross | 10.13.20 | 29 Days |
| 23 | Bukhari Center | 10.16.20 | 26 Days |
| 24 | Al-Israa Academy | 10.16.20 | 26 Days |
| 25 | Khalid Binv Walid | 10.16.20 | 26 Days |
| 26 | Iqra Center | 10.16.20 | 26 Days |
| 27 | Omar Binu Khidaab | 10.16.20 | 26 Days |
| 28 | Nurul Huda Islamic Center | 10.16.20 | 26 Days |
| 29 | Nurul Iman Institute | 10.16.20 | 26 Days |
| 30 | Karmel Learning Center | 10.16.20 | 26 Days |
| 31 | Mercy Center | 10.16.20 | 26 Days |
| 32 | Midwest Youth & Cultural Network | 10.16.20 | 26 Days |
| 33 | Tawhid Islamic Center | 10.16.20 | 26 Days |
| 34 | Salaama Education and Community Center | 10.16.20 | 26 Days |
| 35 | Stigma Free – Mankato | 10.19.20 | 23 Days |
| 36 | Stigma Free – Willmar | 10.19.20 | 23 Days |
| 37 | Confederation of Somali in Minnesota | 10.22.20 | 20 Days |
| 38 | Al Hikma | 10.22.20 | 20 Days |
| 39 | Iman Cultural Center | 10.22.20 | 20 Days |
| 40 | Rahman Center | 10.22.20 | 20 Days |
| 41 | Hilltop | 10.22.20 | 20 Days |

36. MDE has no right to require Feeding Our Future, or any other sponsor, to request a site ID before allowing it to submit an application. MDE's application process creates additional hurdles, delays, and burdens to sponsors that are not allowed under federal law.

37. In addition to the 41 sites above, MDE has allowed Feeding Our Future to submit applications for 10 sites without as part of step 2 of its application process on another 10 sites:

|    | Site Name | Date Site ID Requested | Step 2 Submitted | Total Duration |
|----|-----------|------------------------|------------------|----------------|
| 42 | Bright Horizon Therapy | 9.28.20 | 11.4.20 | 44 Days |
| 43 | Twin Lakes Center | 10.6.20 | 11.4.20 | 36 Days |
| 44 | All Star Academy | 10.6.20 | 11.11.20 | 36 Days |
| 45 | Hope Center | 10.6.20 | 11.4.20 | 36 Days |
| 46 | Nawal Restaurant | 4.28.20 | 10.9.20 | 33 Days |
| 47 | Somali American Community | 10.12.20 | 11.11.20 | 30 Days |
| 48 | Action For East African community | 10.13.20 | 11.9.20 | 29 Days |
| 49 | Ibn Nabawi | 10.16.20 | 11.10.20 | 26 Days |
| 50 | Darul Quba Center | 10.16.20 | 11.10.20 | 26 Days |
| 51 | UCYEC Enrichment Center | 10.16.20 | 11.9.20 | 26 Days |

38. In total, Feeding Our Future has 25 applications that have been pending for over 30 days without response from MDE.

39. Each distribution site represents tens-of-thousands of meals to hundreds of needy children who continue to go without healthy and nutritious meals during a global pandemic.

40. MDE's delays are particularly hard to understand in the cases of Bukhari Center, Al-Israa Academy, Khalid BIny Walid, Igra Center, Omar Binu Khidaab, Nurual Huda Islamic Center, Nurual Iman Institute, Karmel Learning Center, UCYEC Center, Ibn

10

Nabawi, Darul Quba Center, and Hope Center. Those 12 distribution sites were previously approved to work with a different sponsor. MDE has already reviewed and approved their participation. The sponsor they were working with, however, closed and asked Feeding Our Future to absorb its locations. Their approval should take minutes, not weeks and in no circumstances longer than the federally mandated review period.

### V.   MDE Unilaterally Terminated Some Distribution Sites

41.   Between April 13 and April 23, 2020, Feeding Our Future contacted MDE to submit applications for 8 different locations to participate as distribution sites in CACFP's afterschool program: Afro Deli, Evergreen Grocery and Deli, Safari Restaurant, Nawal Restaurant, Minnesota Coffee, Sambusa King, Shafi'i Tutoring and Homework Help, and Sombosa Restaurant.

42.   Each of the sites is an upstanding business with deep connections to the community. For example, Abdirahman Kahin, the owner of Afro Deli, was invited by President Obama to attend his final State of the Union address. In his speech, President Obama commended Mr. Kahin for his dedication to the community, creation of jobs, and contribution to the economy.

43.   MDE initially refused to provide Feeding Our Future site IDs to submit applications for any of these sites. MDE offered no explanation of any kind about why it was refusing to allow Feeding Our Future to apply for these sites to be added.

44.   After exhaustive discussions with MDE, April 28, 2020, Feeding Our Future sent MDE a draft complaint and litigation hold. Feeding Our Future advised MDE that if the sites were still not approved by April 30, it would file the action. On April 29th at

5:31pm MDE relented and represented that all 8 sites would be given site IDs and their applications would be approved without delay.

45. MDE declined to provide any explanation of why it initially refused to allow Feeding Our Future to apply for those distribution sites, or why it changed its mind so completely.

46. Soon after, Feeding Our Future also submitted applications to open distribution sites at Dur Dur Restaurant; Lido Restaurant; and S&S Catering. Those applicants, along with the 8 listed above, were all accepted and approved through December 31, 2020.

47. On or around October 15, 2020, without discussing it with Feeding Our Future, MDE unilaterally changed the applications for five of those sites to end their participation on October 31, 2020. MDE did not issue any formal decision or explain its actions.

48. MDE unilaterally terminated the participation of: Dur Dur Restaurant; Lido Restaurant; S&S Catering; Safari Restaurant; and Evergreen Grocery and Deli. Collectively, those locations provided over 750,000 meals and snacks in October alone.

49. MDE has provided no explanation for its decision and has not allowed Feeding Our Future to pursue any appeal or reconsideration.

## COUNT I
## DECLARATORY JUDGMENT

50. Feeding Our Future incorporates by reference all previously pled paragraphs as if fully stated herein.

51. A number of disputes exist between the parties:

   a. Whether MDE can continue to enforce a preapplication process that requires sponsors to submit a request for a "site ID" before being allowed to submit an application for a new CACFP or SFSP distribution site;

   b. Whether MDE must comply with 7 C.F.R. 226(b)(3) by responding to applications in writing within 30 days;

   c. Whether MDE is required to accept applications for the sites identified above that are waiting to receive site IDs; and

   d. Whether the sites Feeding Our Future has submitted requests for site IDs or formal applications qualify as sites under CACFP and SFSP.

52. A determination of these issues will terminate the controversy between the parties.

53. Feeding Our Future has a practical interest in the resolution of these disputes and it will affect its ability to fulfill its mission of providing heathy and nutritious meals to need children in low-income communities that have been disproportionately impacted by the global pandemic and social unrest.

WHEREFORE, Feeding Our Future seeks a declaratory judgment that MDE does not have the right to enforce a preapplication process; that MDE must comply with 7 C.F.R 226(b)(3) and all other federal regulations; that MDE is required to accept the applications for all sites awaiting site IDs; and that MDE must approve all site applications currently pending. Feeding Our Future is also seeking all costs, fees, and damages associated with MDE's wrongful refusal to allow sites to apply for CACFP and SFSP participation.

## COUNT II
## INJUNCTIVE RELIEF

54. Feeding Our Future incorporates by reference all previously pled paragraphs as if fully stated herein.

55. MDE has precluded Feeding Our Future from any administrative remedies by refusing to take any action on the pending applications.

56. Feeding Our Future has no adequate alternative remedies available under the law.

57. Feeding Our Future has been and continues to be irreparably harmed by MDE's refusal to accept and process applications. Every day that goes by hundreds of the state's most vulnerable children are going without much needed meals and food during a global pandemic.

58. Feeding Our Future asks for an immediate injunction requiring MDE to dispose of its preapplication process; immediately accept all pending applications; and approve all pending applications.

WHEREFORE, Feeding Our Future is seeking injunctive relief precluding MDE from continuing to enforce its preapplication process; requiring MDE to comply with all federal requirements; and requiring MDE to approve the applications for each pending site. Feeding Our Future is also seeking all costs, fees, and damages associated with this action.

## COUNT III
## WRIT OF MANDAMUS

59. Feeding Our Future incorporates by reference all previously pled paragraphs as if fully stated herein.

60. MDE has a clear duty imposed by law to accept and process applications for distribution sites for the CACFP and SFSP programs. Despite this requirement, MDE is refusing to accept applications; it is imposing a preapplication process; and depriving Feeding Our Future the right to distribute food to children in need.

61. MDE has unjustifiably refused to accept or process the applications of dozens of distribution sites, all of which qualify under the CACFP and SFSP programs.

62. Feeding Our Future has been, and continues to be, harmed by MDE's decision not to accept or process applications for additional distribution sites.

WHEREFORE, Feeding Our Future requests that the Court enter a Writ requiring MDE to end its preapplication process; accept all pending applications; and grant all pending applications from Feeding Our Future. Feeding Our Future is also seeking all costs, fees, and damages associated with MDE's refusal to enter a final order.

## COUNT IV
## BREACH OF CONTRACT

63. Feeding Our Future incorporates by reference all previously pled paragraphs as if fully stated herein.

64. On July 27, 2018, and again on June 30, 2020, MDE and Feeding Our Future executed a contract for Feeding Our Future to provide CACFP and SFSP services to low-income and minority communities.

65. Under the explicit terms of the agreement, MDE promised to "provide appliable funds and commodities in accordance with federal statutes and program regulations cited in this agreement and additional program directives and guidance issued by MDE and USDA."

66. MDE breached that contract by failing to accept Feeding Our Future's applications for additional distribution sites; unilaterally terminating distribution sites; and creating additional and unnecessary hurdles for Feeding Our Future's administration of CACFP and SFSP by creating a two-step application process.

67. MDE's breach of contract caused Feeding Our Future substantial and ongoing damages. MDE's refusal to process distribution sites and unilateral termination of other sites has caused Feeding Our Future to lose millions of dollars in federal funding, damaged its reputation in the community, and has prevented Feeding Our Future from working with additional sites.

WHEREFORE, Feeding Our Future is seeking: (i) a jury verdict that MDE breached its contract with Feeding Our Future; (ii) all associated damages, including lost federal funding, lost productivity, lost business opportunities, and damages to its reputation in the community; and (iii) the legal costs, fees, and damages associated with MDE's breach

## COUNT V
## TORTIOUS INTERFERENCE WITH CONTRACTS

68. Feeding Our Future incorporates by reference all previously pled paragraphs as if fully stated herein.

69. Feeding Our Future has contracts with the distribution sites and catering companies to provide food to in low-income communities.

70. MDE is aware of Feeding Our Future's contractual relationships with third parties and requires them as part of the first step of the application process.

71. MDE intentionally interfered with those contractual relationships to deprive Feeding Our Future of the benefits of those contracts.

WHEREFORE, Feeding Our Future is seeking: (i) a jury verdict that MDE tortuously interfered with its contracts; (ii) the revenue it lost from those contracts and damages it suffered; and (iii) the costs, fees, and damages associated with MDE's actions.

## COUNT VI
## MINNESOTA HUMAN RIGHTS ACT

72. Feeding Our Future incorporates by reference all other paragraphs in this Complaint as if fully stated herein.

73. Feeding Our Future caters to members of a protected group of racial minorities and foreign nationals.

74. Feeding Our Future sought and qualifies for funding through CACFP and SFSP that was made available to all qualified members of the public.

75. MDE denied Feeding Our Future the right to apply for additional distribution sites despite qualifying.

76. MDE denied Feeding Our Future and their sites CACFP and SFSP funding based on their race, national origin, color, and religion.

17

77. MDE continues to give CACFP and SFSP funding to other businesses no more qualified than Feeding Our Future.

78. MDE intentionally and wrongfully refuses to do business with Feeding Our Future and the community it serves by discriminating in the basic terms, conditions, and performance of its duties because of Feeding Our Future's race, national origin, color, and religion.

79. As a result of MDE's discriminatory practices, Feeding Our Future has suffered and continues to suffer substantial damages.

WHEREFORE, Feeding Our Future is seeking its lost revenue, all related damages, costs, and attorneys' fees, and the imposition of a civil penalty.

## COUNT VII
## PROCEDURAL AND SUBSTANTIVE DUE PROCESS

80. Feeding Our Future incorporates by reference all other paragraphs in this Complaint as if fully stated herein.

81. Feeding Our Future exclusively services members of a protected class of minorities based on race, religion, and national origin.

82. MDE knew that Feeding Our Future exclusively services members of a protected class.

83. MDE intentionally harmed Feeding Our Future by subjecting it to additional procedural hurdles in violation of federal regulations.

84. MDE treated other organizations that serve different communities differently by accepting and processing their applications; not creating additional hurdles; and by approving qualified distribution centers.

WHEREFORE, Feeding Our Future is seeking its lost revenue, all related damages, costs, and attorneys' fees.

## COUNT VIII
## EQUAL ACCESS TO JUSTICE

85. Feeding Our Future incorporates by reference all other paragraphs in this Complaint as if fully stated herein.

86. MDE's decisions and actions are clearly in violation of federal law and the Minnesota Court of Appeals' ruling in *In re Partners in Nutrition*, 896 N.W.2d 564, 571 (Minn. App. 2017).

87. Feeding Our Future is entitled to all its fees and costs under the Equal Access to Justice Act, Minn. Stat. § 15.471.

WHEREFORE, Feeding Our Future is seeking its lost revenue, all related damages, costs, and attorneys' fees.

## **JURY DEMAND**

Feeding Our Future hereby request a jury on all issues so triable.

Dated: November 11, 2020                        MARTIN HILD, PA

*s/ Rhyddid Watkins*
Ll. Rhyddid Watkins, Atty. No. 0390514
*LRW@MartinHild.com*
14231 E. 4th Ave, Suite 380
Aurora, CO 80011
Telephone: (407) 660-4488

**ATTORNEYS FOR FEEDING OUR FUTURE**